# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA KAY SPEARMAN, )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>　　　　　Defendant. ) | Case No. CIV-13-389-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Patricia Kay Spearman requests review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 28, 1954, and was fifty-eight years old at the time of the administrative hearing (Tr. 31). She completed high school and attended one year of college, and has worked as a production assembler and hand packager (Tr. 24, 130). The claimant alleges inability to work since March 30, 2008 due to nerves in her neck and uselessness in both arms (Tr. 129).

## Procedural History

On September 2, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a decision dated May 24, 2012 (Tr. 15-24). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of medium work, *i. e.*, she could lift/carry twenty-five pounds frequently and fifty pounds occasionally, stand/walk/sit for six hours in an eight-hour workday, but that she could never climb, balance, stoop, knee, crouch, or crawl (Tr. 20). The ALJ thus

concluded that the claimant could return to her past relevant work as a production worker or hand packager (Tr. 24).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider her impairments singularly and in combination, (ii) failing to properly assess her credibility, (iii) failing to properly analyze her RFC, (iv) failing to adequately develop the record, and (v) improperly finding that she could return to her past relevant work. The undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the claimant's RFC, and the decision of the Commissioner should therefore be reversed.

The medical evidence reveals that the claimant has multilevel degenerative disc disease with neural foraminal narrowing, and no spinal stenosis at C5-6 and C6-7, according to an MRI of her cervical spine done on June 18, 2010 (Tr. 198, 200). Due to this test, she was sent for physical therapy at River Valley Rehab Center in Fort Smith, Arkansas beginning July 9, 2010, through August 2, 2010 (Tr. 244-245). The patient was also given home exercises and by July 23, 2010, she reported being essentially pain free with both of her upper arms and that her range of motion had improved (Tr. 245). On November 19, 2010, a state reviewing physician found that the claimant could perform the full range of medium work, with no postural limitations (Tr. 203).

The claimant continued to report cervical and leg pain to her treating physician (Tr. 225, 228). On March 29, 2012, a bilateral knee X-ray revealed degenerative arthritic changes around both knees, new since an April 27, 2004 exam, with slightly more extensive degeneration on the right (Tr. 212). During that same visit, the claimant

reported chronic neck pain, and that she would consider gastric bypass surgery due to her obesity (Tr. 215).

At the administrative hearing, the claimant testified that her neck pain is pretty much constant, that Cymbalta helps control the pain but does not eliminate it, and that her back hurts as a result of the neck pain (Tr. 33). She also testified that she could lift up to 20 pounds maybe, but that using her arms consistently would cause a lot of pain, and that sitting and standing for extended periods made her arthritic knee pain worse (Tr. 34). She stated that she uses a cane when walking outside or sometimes in the house to help with balance, and that she alternates sitting and standing during the day (Tr. 35). She testified that she did not believe she could perform assembly line work because it would cause excruciating pain and they do not let you rest (Tr. 36). She stated that she sits in a recline up to six hours a day, in order to elevate her feet which helps with knee pain (Tr. 37). She further testified that she has trouble gripping things and has dropped a cup of coffee, and that pain makes lying down uncomfortable (Tr. 38-39).

In his written opinion, the ALJ summarized the claimant's hearing testimony, and much of the medical evidence. He specifically noted her cervical spine MRI revealing disc desiccation and other degenerative changes, and that she was treated with physical therapy following an orthopedic consultation (Tr. 21-22). He noted that apart from difficulties prior to her physical therapy and a couple of other "one-time findings," the claimant had been within normal limits on repeat examination (Tr. 22). He then stated that her claims of difficulty walking due to degenerative joint disease in her knees, as well as her sit/stand limitations of only two hours in an eight-hour workday and the need

to lie down in her recliner were not credible (Tr. 22). He did not discuss the x-ray of the claimant's knee revealed degenerative changes, nor anything else from the March 29, 2012 visit other than a medication adjustment request (Tr. 20-24). He then gave great weight to state reviewing physician opinions that she could perform medium weight, but with the additional postural limitations to account for her cervical degenerative disc disease (Tr. 22).

Here, the claimant argues that the ALJ erred in failing to consider her impairments, both individually and in combination, at step four. Although the record contains evidence of the times the claimant complained of pain and received treatment and/or physical therapy, the only physical RFC assessment was completed shortly after the claimant was discharged from physical therapy and before the knee x-rays and continued complaints of cervical, joint, and leg pain. Furthermore, the ALJ ignored evidence related to the degenerative changes in her knee, as well as the evidence related to her obesity. This failure to consider all her impairments at step four was error. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (20th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that

the Commissioner applied the correct legal standards[.]"). More specifically, the ALJ should at least have discussed the impact of the claimant's obesity on her other impairments, in light of the mention of the possible need for gastric bypass surgery to relieve other impairments. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting "obesity is [a] medically determinable impairment [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."); *DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**